Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 c 1221 & 00 c 1585 | **DATE** | September 28, 2001 |
| **CASE TITLE** | *In re Krumhorn* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____ .

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .

(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(7) ☐ Trial[set for/re-set for] on _____ at _____ .

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, the judgment of the Bankruptcy Court is AFFIRMED. The clerk of the court is directed to timely terminate this case from the court's docket. IT IS SO ORDERED.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | SEP 28 2001 date docketed | 7 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | 01 SEP 28 PM 2:05 | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| RTS | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re MORRIS D. KRUMHORN,<br><br>    Debtor,<br>——————————————————<br>In re MORRIS D. KRUMHORN,<br><br>    Plaintiff,<br><br>V.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | 00 c 1221<br><br>DOCKETED<br>SEP 2 8 2001 |

## MEMORANDUM OPINION AND ORDER

**BLANCHE M. MANNING, District Court Judge:**

Chapter 7 Appellant, Morris D. Krumhorn, appeals the order of Judge Ronald Barliant from the United States Bankruptcy Court for the Northern District of Illinois. That order entered judgment for the appellee, the United States, and held that Krumhorn owes money to the Internal Revenue Service (the "IRS") for the tax years of 1978, 1981, and 1982. Moreover, the Bankruptcy Court determined that his debts to the IRS were excepted from any discharge granted under 11 U.S.C. § 727. For the following reasons, the judgment of the Bankruptcy Court is AFFIRMED.

**I.   Background**

This dispute arises out of the manner in which Krumhorn made tax deductions caused by losses from commodities transactions in 1978. Specifically, the IRS

disallowed a deduction of $4,168,844 made by Krumhorn which was the result of a loss on a "spread" transaction – where a trader makes separate but related transactions on futures contracts which, if successful, turn a profit if the market moves favorably for the trader's positions.

As a result of the IRS's disallowance of the deductions that Krumhorn claimed on his tax returns for 1978, 1981 and 1985, the IRS issued him notices of deficiency for 1978, and 1981 through 1985.

In 1990 and 1991, Krumhorn challenged IRS's notices by filing two actions in the United States Tax Court. On or about February 23, 1993, Krumhorn and the IRS entered into a stipulation agreement where Krumhorn agreed that the first case's holding on Krumhorn's London transactions would be binding on him for the same types of transactions in the second case. On July 14, 1994, the United States Tax Court issued its opinion sustaining the IRS Commissioner's additional tax assessments. *Krumhorn v. Commissioner of Internal Revenue*, 103 T.C. 29 (U.S.T.C. 1994). Krumhorn reads the court's opinion as holding only that he failed in carrying the burden of proving that he did not act negligently and not a judicial finding of fraud, willfulness, "or any other language of criminality as arises from the criminal sections of the Internal Revenue Code." This characterization of the Tax Court's opinion is disputed by the IRS.

On December 4, 1996, the Tax Court found a deficiency in income tax for 1978 in the amount of $2,801,888 plus an additional $140,094. On or about March 26, 1997, the Tax Court entered its decision with respect to the second case and found that Krumhorn made substantial underpayments in 1981 and 1982.

From May through June 1997, the IRS made assessments against Krumhorn pursuant to the rulings in the two cases for the 1978, 1981, and 1982 tax years. The assessments, including amounts sought for income tax, penalties, and interest total nearly $20.5 million.

On May 8, 1998, Krumhorn filed a bankruptcy petition under chapter 7 of the Bankruptcy code. On September 12, 1998, Krumhorn filed this action in the bankruptcy court to determine the dischargeability of his tax liabilities for the years 1978, 1981, and 1982.

## II. Standard of Review

On appeal from an order of a bankruptcy court, a district court reviews factual findings of the bankruptcy court under a "clearly erroneous" standard, but reviews conclusions of law de novo. F.R.Bankr.P. 8013; *see also, Meyer v. Rigdon*, 36 F.3d 1375, 1378 (7th Cir.1994); *In re Roberson*, 999 F.2d 1132, 1134 (7th Cir.1993). Since this court is reviewing the bankruptcy court's holding that Krumhorn was precluded from litigating whether he acted intentionally . . . the court reviews the decision de novo.

## III. Dischargeability of Debts Under 11 U.S.C. § 523(a)(1)(C)

Title 11 U.S.C. § 727(b) sets forth the general rule that in a chapter 7 discharge, all liabilities of the debtor arising prior to the filing of bankruptcy are discharged. However, the statute is intended to assist the "'honest but unfortunate debtor." *Grogan v. Garner*, 498 U.S. 279, 286-87, 111 S.Ct. 654, 659 (1991); *see, In re Birkenstock*, 87 F.3d 947, 950 (7th Cir. 1996). Therefore, Congress passed § 523 of the code to serve as an exception to the rule of discharge.

Section 523 of the Bankruptcy Code provides that certain tax debts are not dischargeable in a Chapter 7 case. Section 523 states, in relevant part, that

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt – (1) for a tax . . . (C) with respect to which the debtor made a fraudulent return *or* willfully attempted in any manner to evade or defeat such tax . . .

11 U.S.C. § 523(a)(1)(C).

The burden of proving that a debtor's tax liabilities are non-dischargeable rests with the IRS who must show by a preponderance of the evidence that a debtor willfully attempted to evade his tax obligations. *Grogan*, 498 U.S. at 279, 111 S.Ct. at 654.

The Seventh Circuit holds that "[t]he plain language of the second part of § 523 (a)(1)(C) comprises both a conduct requirement (that the debtor sought 'in any manner to evade or defeat his tax liability') and a mental state requirement (that the debtor did so 'wilfully')." *In re Birkenstock*, 87 F.3d 947, 951 (7th Cir. 1996). The mental state requirement must show that "the debtor must both (1) know that he has a tax duty under the law, and (2) voluntarily and intentionally attempt to violate that duty. The willfulness requirement prevents application of the exception to debtors who make inadvertent mistakes, reserving nondischargeability for those whose efforts to evade tax liability are knowing and deliberate." *Id.* at 952.

Section 523 does not require that the government or a creditor claim that the debtor made a fraudulent tax return either. *Id.* at 951. It is sufficient to show by a preponderance of the evidence that the debtor "willfully attempted in any manner to evade or defeat" their federal income tax obligations. *Id.; see, Grogan*, 498 U.S. at 286-88, 111 S.Ct. at 659-60.

## IV. *Collateral Estoppel*

The doctrine of collateral estoppel applies in bankruptcy discharge and dischargeability proceedings. *See, Grogan*, 498 U.S. at 285 n.11, 111 S.Ct. at 658 n.11 (1991) ("We now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)"); *Meyer v. Rigdon*, 36 F.3d 1375, 1378-79 (7th Cir. 1994).

The doctrine of collateral estoppel requires four elements to be met: (1) the issue sought to be precluded must be identical to that involved in the prior litigation, (2) the issue must have been actually litigated, (3) the determination of the issue must have been essential to the final judgment, and (4) the party against whom estoppel is invoked must be fully represented in the prior action." *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.*, 914 F.2d 900, 906 (7th Cir. 1990); *Gray v. Lacke*, 885 F.2d 399, 406 (7th Cir. 1989).

## V. *Discussion*

### A. Bankruptcy Court's Finding of Krumhorn's Mental State

Upon review of the tax court's opinion, the Bankruptcy Court ruled that Krumhorn "intentionally developed a trading scheme for the sole purpose of evading his tax obligations. As such, both the conduct and the mental state requirements stated by the Seventh Circuit in *Birkenstock* have been met." Opinion at 6. The Bankruptcy court noted one of the specific findings from the Tax Court's opinion which found:

> that it was . . . [Krumhorn's] intent from the very beginning to systematically close straddle legs that, in every case, resulted in losses in year one and to move the offsetting gains to subsequent years. Stated

5

differently, the realization of losses in year one was 'preordained.' This scheme was not necessary or helpful in making a profit.

Thus, the Bankruptcy Court concluded that the tax court adjudicated the dischargeability issue under § 523 (a)(1)(C) against Krumhorn because he willfully attempted to evade or defeat his tax obligations. A willful attempt to evade or defeat the payment of taxes is "intentional, deliberate, voluntary." *In re Berzon*, 145 B.R. 247, 251 (N.D.Ill. 1992); *see also*, *Cheek v. U.S.*, 498 U.S. 192, 111 S.Ct. 604 (1991).

The court held that "because both parties were fully represented in the tax court cases and the issue of whether [Krumhorn] willfully evaded his tax obligations was actually litigated and essential to the tax court's final judgment that [Krumhorn's] trades lacked economic substance, [Krumhorn] is barred from relitigating the wilful evasion issue here." Thus, the court concluded that "the doctrine of collateral estoppel precludes [Krumhorn] from relitigating this issue in this Court, and [Krumhorn's] tax debt to the IRS is therefore nondischargeable under § 523 (a)(1)(C)."

In his appeal, Krumhorn argues that the Bankruptcy Court erred in ruling that collateral estoppel barred him from contesting the discharge issue under § 523 (a)(1)(C). He contends that the tax court did not find that he acted willfully, as the Bankruptcy Court's holding states.

Krumhorn argues that the language in § 523 (a)(1)(C) derives from the criminal tax evasion statute, 26 U.S.C. § 7201, which states: "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony . . ." He contends that the tax court's rulings only held that Krumhorn did not prove -- in the

6

cases that he brought – that he did not act negligently or that his transactions were not an economic sham. While certainly displeased with that holding, Krumhorn argues that the Tax Court did not adjudicate the issue of whether Krumhorn acted fraudulently or willfully. Yet, he argues, the Bankruptcy court's opinion "has found fraud based on Krumhorn's failure to prove that he was not negligent, or that transactions were not an 'economic sham'" in the Tax court. Therefore, Krumhorn claims that the Bankruptcy court read too much into the Tax Court's holding when it concludes that the Tax Court adjudicated the § 523 (a)(1)(C) discharge issue against him. Krumhorn contends that the Bankruptcy court's decision has misrepresented the Tax Court's holding by "equat[ing it] with an adjudication of tax fraud."

Krumhorn peppers his brief with statements that the Bankruptcy court erred in that it made an unsupported finding that Krumhorn acted fraudulently and/or criminally: "It has been the law that the very complexity of the tax law is such that a specific intent to violate the law is part of the tax charge"; "Tax crimes require proof of specific intent, and willfulness is an element"; "[The Tax Court's findings] are far from an adjudication of wilfulness and fraud"; "There is no judgment which proves tax fraud, and no finding that proves tax fraud." There are other examples. The point is, Krumhorn's argument insinuates: (1) that the Bankruptcy Court determined that the Tax Court held Krumhorn acted criminally and/or fraudulently; (2) that a finding of criminal or fraudulent conduct is required to prohibit a debtor from taking a discharge under § 523 (a)(1)(C). Both of these positions are incorrect.

At the beginning of its analysis, the Bankruptcy Court announced that its basis for holding that collateral estoppel barred Krumhorn from re-litigating the discharge

7

issue was because of the Tax Court's finding of willfulness, not fraud: "Although the IRS argues that the Debtor's tax returns were fraudulent, the Court need not reach that issue because it is established by the tax court decision, discussed below, that the Debtor willfully attempted to evade the tax." Opinion at 3. The Bankruptcy Court restated the requirements of § 523 (a)(1)(C): "in order to prevail, the IRS must prove by a preponderance of the evidence that [Krumhorn] 'made a fraudulent return *or wilfully attempted in any manner to evade or defeat*' his tax obligations." *Id.* (emphasis added). Thus, the Bankruptcy court clearly held that its basis for finding that the § 523 (a)(1)(C) discharge issue was barred was because of the Tax Court's finding that Krumhorn acted willfully. As stated above, this is an appropriate basis for the court to deny a discharge and does not require a finding of fraudulent conduct.

B. <u>Application of Collateral Estoppel</u>

Krumhorn also contends that the Bankruptcy Court erred in determining that collateral estoppel barred his argument for discharge. He argues that "wilfulness, fraud, evasion, and all forms of tax crime, were not the subject of the Tax Court case." Therefore, Krumhorn contends that the issue of willfulness was not essential to the final judgment in the Tax Court – one of the four requirements for establishing collateral estoppel. Therefore, he argues that the Bankruptcy Court erred in ruling that collateral estoppel barred him from litigating the discharge issue.

The Government counters that a central issue in the Tax Court's decision – whether Krumhorn's transactions lacked economic substance and, thus, were shams – was essential to the court's holding. The Government cites the Tax Court's opinion,

8

which stated that "a central issue in the case before us is the application of the *per se* rule of section 108(b) [of the Deficit Reduction Act]." *Krumhorn*, 103 T.C. at 38.

Section 108(a) of the Act provides that: in the case of any disposition of 1 or more positions .. [which] form part of a straddle ... any loss from such disposition shall be allowed for the taxable year of the disposition if such loss is incurred in a trade or business, or ... in a transaction entered into for profit. Section 108(b) provides that "[f]or purposes of subsection (a), [which covers pre-1982 straddle transactions], any loss incurred by a commodities dealer in the trading of commodities shall be treated as a loss incurred in a trade or business."

Therefore, "straddle losses are deductible only when derived from a profit motivated straddle transaction, rather than from a tax motivated transaction." *Gardner v. Commissioner of Internal Revenue*, 954 F.2d 836, 838 (2nd Cir. 1992). Thus, if it is determined that the transactions were shams, motivated by tax considerations, 108(b) does not apply. Deciding that Krumhorn's deductions were shams was a key holding in the Tax Court's judgment against him. Specifically, the Tax Court held: "section 108(b) does not apply to commodities dealers whose transactions lack economic substance. Therefore, we reiterate ... that it is appropriate before applying the *per se* rule of section 108(b) to inquire whether the straddle transactions at issue are devoid of economic substance." *Krumhorn*, 103 T.C. at 50. The Tax Court concluded that Krumhorn's deductions were not allowable. Therefore, as the Bankruptcy Court held, "the issue of whether [Krumhorn] willfully evaded his tax obligations was actually litigated and essential to the tax court's final judgment that [his] obligations was actually

9

litigated and essential to the tax court's final judgment that [Krumhorn's] trades lacked economic substance." Opinion at 7. Therefore, the Bankruptcy Court held that Krumhorn was "barred from relitigating the wilful evasion issue here." *Id.* Therefore, Krumhorn's contention that the issue of whether he willfully evaded his taxes was not essential to the Tax Court's final judgment is incorrect. Far from it. The issue was litigated before the Tax Court and, therefore, the Bankruptcy Court correctly barred Krumhorn from relitigating it.

## CONCLUSION

For the foregoing reasons, the decision of the Bankruptcy Court is AFFIRMED. IT IS SO ORDERED.

*Blanche M. Manning*
Blanche M. Manning, U.S.D.J.

Dated: SEP 2 8 2001